# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HANI ODEH, individually and on behalf of the class described below,<br><br>*Plaintiff*,<br><br>v.<br><br>TD AMERITRADE, INC.,<br><br>*Defendant*,<br><br>CITADEL SECURITIES AMERICAS LLC, CITADEL ENTERPRISE AMERICAS LLC, and CITADEL EXECUTION SERVICES, INC.,<br><br>*Respondents in Discovery*. | Removed from the Circuit Court of Cook County, Illinois, County Department, Chancery Division No. 2021-CH-00761<br><br>Civil Action No. _____ |

**NOTICE OF REMOVAL**

**TABLE OF CONTENTS**

**Page**

BACKGROUND ................................................................................................................. 1

GROUNDS FOR REMOVAL .......................................................................................... 4

    I.   Removal Is Proper Pursuant to CAFA. ................................................................ 4

        A.   Plaintiff's Lawsuit Is a "Class Action." ..................................................... 5

        B.   Plaintiff's Proposed Class Comprises Far More than 100 Members. ........ 6

        C.   Minimal Diversity of Citizenship Is Present. ............................................. 7

        D.   The Amount in Controversy Exceeds $5 Million. ..................................... 7

    II.  Alternatively, Removal Is Proper Pursuant to SLUSA. ...................................... 11

TIMELINESS OF REMOVAL ....................................................................................... 12

OTHER PROCEDURAL REQUIREMENTS AND NOTICE ....................................... 13

PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711; the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p and 78bb; and 28 U.S.C. §§ 1441 and 1446, Defendant TD Ameritrade, Inc. ("TD Ameritrade"), hereby removes to the United States District Court for the Northern District of Illinois the above-captioned state-court action, originally filed as Case No. 2021-CH-00761 in the Circuit Court of Cook County, Illinois, County Department, Chancery Division.[1] The complaint and summons are attached as Exhibit A. TD Ameritrade states the grounds for removal below.

## BACKGROUND

1. This case arises from a period of unprecedented volatility in the trading price and volume of several securities. Early in January 2021, members of an online forum called "r/WallStreetBets" made coordinated purchases of the stock of several struggling companies, including GameStop Corp. ("GME"), AMC Entertainment Holdings, Inc. ("AMC"), Nokia Corporation ("NOK"), Naked Brand Group Limited ("NAKD"), and Healthier Choices Management Corp. ("HCMC"). By late January, the prices and trading volume for these "meme stocks" had increased dramatically. Some brokers allegedly responded to this volatility by suspending trading in these securities through their platforms, leading to dozens of class-action complaints being filed in nearly twenty different federal district courts and a few state courts. Although TD Ameritrade never suspended trading on the meme stocks, it has been named as a defendant in many of the meme-stock class actions, including this one.

---

[1] By filing this Notice of Removal, TD Ameritrade does not intend to waive, and hereby reserves, any and all objections as to venue, personal jurisdiction, or the legal sufficiency of the claims, and all other objections and defenses. TD Ameritrade reserves the right to supplement or amend this Notice.

2. Counsel for plaintiff Hani Odeh ("Plaintiff") filed the instant action on February 17, 2021 in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, under the caption *Odeh v. TD Ameritrade, Inc.*, No. 2021-CH-00761. The complaint asserts two counts under Nebraska law—negligence and breach of fiduciary duty—based on purported violations of the "best execution" rule promulgated by the Financial Industry Regulatory Authority ("FINRA"). Compl. ¶¶ 62-78. FINRA is a self-regulatory organization established under federal law to regulate the brokerage industry; it is "subject to significant … oversight" from the U.S. Securities and Exchange Commission ("SEC"), including that the "SEC must approve all of FINRA's rules." *Aslin v. Fin. Indus. Regul. Auth., Inc.*, 704 F.3d 475, 476 (7th Cir. 2013); *see* 15 U.S.C. § 78s. Plaintiff purports to represent a class of "[a]ll persons or entities who attempted to sell HCMC"—which is the common stock of Healthier Choices Management Corp., a security that currently trades "over-the-counter" or "OTC"—"from January 27, 2021 to February 2, 2021 using the TD platform whose orders were rejected or delayed." Compl. ¶ 14.[2]

3. This is not the first time that Plaintiff's counsel has filed these claims against TD Ameritrade; in fact, he filed overlapping claims just two weeks earlier in federal court. On February 3, 2021, Plaintiff's counsel filed another meme-stock class action on behalf of a different plaintiff, James Hiscock. *See Hiscock v. TD Ameritrade, Inc.*, No. 1:21-cv-00624 (N.D. Ill.) (complaint filed Feb. 3, 2021). The *Hiscock* complaint is attached hereto as Exhibit B. Like this case, *Hiscock* asserts claims of negligence and breach of fiduciary duty under Nebraska law based on purported violations of FINRA's best-execution rule with respect to trading in HCMC. Ex. B ¶¶ 37-65. And the *Hiscock* complaint similarly seeks certification of a class of "[a]ll persons or

---

[2] An OTC stock is one that is not listed on a major stock exchange. *See* Charles Schwab, *Over-the-Counter (OTC) Securities*, https://www.schwab.com/stocks/understand-stocks/otc-stock (last visited Mar. 23, 2021).

entities who attempted to purchase or s[ell] OTC stocks from January 27, 2021 to February 1, 2021 using the TD platform whose orders were rejected or delayed." *Id.* ¶ 10.

4. On February 5, 2021, *Hiscock* was identified as a case that should be centralized in a single federal forum with numerous overlapping meme-stock cases, under 28 U.S.C. § 1407, the statute governing multidistrict litigation ("MDL"). *See In re Jan. 2021 Short Squeeze Trading Litig.*, MDL No. 2989, Dkt. 1-2 (J.P.M.L.) (transfer motion filed Feb. 5, 2021). *Hiscock* has been stayed, by agreement, pending a ruling by the Judicial Panel on Multidistrict Litigation ("JPML") whether to transfer *Hiscock* and the other related cases for consolidated or coordinated pre-trial proceedings. *Hiscock*, No. 1:21-cv-00624, Dkt. 10. Plaintiff's counsel did not dispute that centralizing *Hiscock* with the other meme-stock class actions is appropriate before the deadline to oppose centralization expired on March 1.

5. Plaintiff's counsel instead filed the instant case in state court on February 17, 2021, asserting claims on behalf of Plaintiff here that overlap with the claims in *Hiscock*. Indeed, the complaint in this action copies large sections of the *Hiscock* complaint almost word for word. *Compare* Compl. ¶¶ 1-2 (Introduction), ¶ 16 (questions of law or fact common to proposed class members), ¶¶ 22-42 (alleged breach of duty under the best-execution rule), ¶¶ 62-78 (two counts of negligence and breach of fiduciary duty), *with* Ex. B ¶¶ 1-2, 13, 17-36, 49-65. Both complaints are class actions focusing on the plaintiff's trading in the same OTC stock (*i.e.*, HCMC) in late January and early February. *See* Compl. ¶¶ 43-50; Ex. B ¶¶ 37-43. Both claim that TD Ameritrade was unable to fulfill orders during overlapping class periods because third-party market makers stopped accepting those orders. Compl. ¶ 52; Ex. B ¶ 44. Both assert negligence and fiduciary-duty claims under Nebraska law based on alleged violations of the SEC-approved "rules promulgated by FINRA." *See* Compl. ¶¶ 62-78; Ex. B ¶¶ 49-65.

3

6. Although Plaintiff's counsel filed *Hiscock* in federal court, he filed this case in state court in an attempt to plead around federal jurisdiction—and evade centralization under § 1407. For example, the complaint asserts that "total classwide damages" in this case "are less than $5,000,000," the threshold for federal jurisdiction under CAFA. Compl. ¶ 12. The *Hiscock* complaint, by contrast, alleges that the "[a]ggregate claims of individual Class Members exceed $5,000,000." Ex. B ¶ 4. The instant complaint seeks to justify the lower amount in controversy by seeking certification of a subset of the same class in *Hiscock*—a class artificially limited to persons who attempted to "sell" (but not buy) HCMC stock. Compl. ¶ 14 ("All persons or entities who attempted to sell HCMC from January 27, 2021 to February 2, 2021 using the TD platform whose orders were rejected or delayed."). The instant complaint also omits other unspecified OTC stocks from its alleged class definition, but that is at most a cosmetic distinction from the *Hiscock* complaint, which makes just a fleeting reference to "OTC stocks" in its class definition and proceeds to focus, like this case, only on HCMC in its substantive allegations. *Compare* Ex. B ¶ 10, *with id.* ¶¶ 37-48.

## GROUNDS FOR REMOVAL

7. Removal of this class action is proper under CAFA. *See* 28 U.S.C. §§ 1332(d), 1453(b). Alternatively, if HCMC is a "covered security," removal would be proper under SLUSA. *See* 15 U.S.C. §§ 77p and 78bb.

**I.  Removal Is Proper Pursuant to CAFA.**

8. CAFA generally authorizes removal of "class actions," as defined in § 1332(d)(1). *See* 28 U.S.C. § 1453(b). It provides federal jurisdiction over class actions (1) comprising at least 100 plaintiffs, (2) involving minimal diversity of citizenship of the parties, and (3) implicating an aggregate amount in controversy that exceeds $5 million, exclusive of interest and costs. 28 U.S.C.

4

§ 1332(d); *see Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 827-28 (7th Cir. 2018).

9. TD Ameritrade denies any liability in this case and reserves all rights to oppose class certification and contest the merits of all claims asserted. Subject to and without waiving those rights, however, TD Ameritrade submits that the complaint satisfies the jurisdictional requirements for removal under CAFA. The putative class, as defined in the complaint, includes many more than 100 class members that are minimally diverse with TD Ameritrade. And while the claims are worthless on the merits, they involve a matter in controversy that far exceeds the sum of $5 million within the meaning of CAFA's removal requirements.

    **A.**    **Plaintiff's Lawsuit Is a "Class Action."**

10. CAFA defines "class action" to include "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

11. The complaint seeks certification of "a class action" of similarly situated plaintiffs pursuant to 735 ILCS 5/2-801, Compl. at 14 (prayer for relief), which is Illinois's "state equivalent" of Rule 23 of the Federal Rules of Civil Procedure, *LG Display Co. v. Madigan*, 665 F.3d 768, 771-72 (7th Cir. 2011) (reasoning that an action under 735 ILCS 5/2-801 would be a class action "[a]s defined by CAFA"); *see also Marshall v. H&R Block Tax Servs., Inc.*, 564 F.3d 826, 828 (7th Cir. 2009) ("[T]he Illinois statute that authorizes class actions in Illinois, 735 ILCS5/2-801 *et seq.*, is similar to Rule 23 …."). Plaintiff also seeks to be designated a "representative of the proposed Class." Compl. at 14.

12. Thus, while TD Ameritrade denies that class certification is permissible in this case, Plaintiff's lawsuit is indisputably a putative "class action" within the meaning of CAFA. 28 U.S.C. § 1332(d)(1)(B).

**B.     Plaintiff's Proposed Class Comprises Far More than 100 Members.**

13. Plaintiff's complaint proposes a class of "[a]ll persons or entities who attempted to sell HCMC from January 27, 2021 to February 2, 2021 using the TD platform whose orders were rejected or delayed," excluding "TD, [its] respective officers, directors, and employees, affiliates, legal representatives, heirs, successors, or assignees." Compl. ¶ 14.

14. On its face, the complaint alleges that "hundreds of other investors also attempted to sell shares of HCMC" during the class period. Compl. ¶ 56. In fact, more than 5,000 TD Ameritrade clients placed orders to sell HCMC stock, through its platform, that were rejected during the class period. Mollett Decl. ¶ 6.a.

15. This estimate of the size of the putative class is conservative. Plaintiff purports to represent a class of *all* TD Ameritrade clients who attempted to sell HCMC stock but whose orders were rejected or delayed. TD Ameritrade has conservatively estimated the smaller number of clients whose HCMC sell orders were rejected because "market makers were not accepting orders for HCMC." Compl. ¶ 52. TD Ameritrade excluded from its estimate clients whose sell orders it rejected for unrelated reasons, such as the clients' failure to comply with TD Ameritrade's policies for trading OTC stocks. *See* Mollett Decl. ¶ 8. Even though this limitation makes TD Ameritrade's calculation narrower than the proposed class defined in the complaint, TD Ameritrade's estimate is more than fifty times the 100-class-member threshold required for removal under CAFA.

16. CAFA's minimum class member requirement is thus satisfied.

### C. Minimal Diversity of Citizenship Is Present.

17. CAFA requires minimal diversity of citizenship to invoke federal jurisdiction. This requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

18. Plaintiff is a citizen of Illinois. Citizenship for an individual "means domicile"—*i.e.*, "the person's long-term plan for a state of habitation." *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014). The complaint alleges that Plaintiff resides in Chicago, Illinois. Compl. ¶ 3. TD Ameritrade's records also reflect that Plaintiff resides in Illinois. Mollett Decl. ¶ 5.

19. TD Ameritrade is a citizen of New York (where it is incorporated) and Nebraska (where it has its principal place of business). Mollett Decl. ¶ 3; Compl. ¶ 4; *see* 28 U.S.C. § 1332(c)(1).

20. Accordingly, Plaintiff and TD Ameritrade are citizens of different states and CAFA's minimal diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A).

### D. The Amount in Controversy Exceeds $5 Million.

#### 1. Credible Evidence Confirms that Tens of Millions of Dollars of Sell Orders Were Rejected.

21. CAFA provides for federal jurisdiction over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). In calculating the amount in controversy, "the claims of the individual class members shall be aggregated." *Id.* § 1332(d)(6). The question for removal purposes is not "what damages the plaintiff will recover," but rather "how much is *in controversy* between the parties." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (quoting *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)).

22. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Thus, a removing defendant need "only … establish the amount in controversy by a good faith estimate that is 'plausible and adequately supported by the evidence.'" *Roppo*, 869 F.3d at 579 (quoting *Blomberg*, 639 F.3d at 763). If a defendant satisfies its burden, "then remand is appropriate only if the plaintiff can establish the claim is for less than the requisite amount to a 'legal certainty.'" *Id.* (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)).

23. Here, Plaintiff seeks to recover "all actual and compensatory damages," Compl. at 14, that the proposed class allegedly "suffered … as a result of not being able to sell [its] stock," *id*. ¶ 2. Plaintiff's threadbare assertion that this amount is "less than $5,000,000" does not withstand scrutiny. *Id.* ¶ 12; *see Aliano v. Louisville Distilling Co.*, 115 F. Supp. 3d 921, 926-27 (N.D. Ill. 2015) (rejecting plaintiffs' allegation that "the amount in controversy is less than $5,000,000" where defendant had "plausibly shown" through "credible" evidence "that more than $5,000,000 is at stake").

24. TD Ameritrade's records show that, during the proposed class period, well over $50 million in sell orders for HCMC that were placed on its platform were rejected. Mollett Decl. ¶ 6.b.

25. In calculating that amount, TD Ameritrade excluded sell orders that were rejected for reasons unrelated to Plaintiff's complaint that third-party "market makers were not accepting orders for HCMC," Compl. ¶ 52. Mollett Decl. ¶ 8. For example, TD Ameritrade did not count sell orders that were rejected for failure to comply with TD Ameritrade's policies for trading OTC stocks. *See* Mollett Decl. ¶ 8.

8

26. TD Ameritrade measured the value of the sell orders it did count by multiplying the number of HCMC shares its clients attempted to sell by the market price for HCMC at the time the orders were placed. Mollett Decl. ¶ 9. This calculation confirms that tens of millions of dollars of HCMC sell orders were rejected during the proposed class period.

27. Indeed, Plaintiff himself alleges in sweeping terms that "the proposed class lost millions of dollars." Compl. ¶ 68; *accord id.* ¶ 77. Although the claims are worthless on the merits, the amount in controversy exceeds $5 million by many multiples under any reasonable measure.

28. TD Ameritrade emphasizes that this calculation does not reflect "what damages the plaintiff will recover," *Roppo*, 869 F.3d at 579 (quoting *Blomberg*, 639 F.3d at 763), but it does establish that the jurisdictional amount-in-controversy is easily satisfied in this case. TD Ameritrade's calculation is "plausible and adequately supported by the evidence," *id.* (quoting *Blomberg*, 639 F.3d at 763), and it exceeds CAFA's $5 million threshold many times over.

    **2. Plaintiff Cannot Evade Federal Jurisdiction by Splintering His Claims.**

29. The *Hiscock* complaint independently confirms that the amount-in-controversy requirement is satisfied here. In *Hiscock*, the same counsel expressly pleaded that the amount in controversy exceeds $5 million. Ex. B ¶ 4. That allegation is properly considered for purposes of removal here because Plaintiff's counsel has impermissibly attempted to split the same case across two different proceedings.

30. "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008). Accordingly, CAFA will "not … permit the splintering of lawsuits solely to avoid federal jurisdiction" in certain circumstances. *Id.* at 408. Those include situations where the same

9

attorney files lawsuits on behalf of different putative classes where there is "no colorable basis" for dividing up the classes, *Hubbard v. Elec. Arts, Inc.*, 2011 WL 2792048, at *7 (E.D. Tenn. July 18, 2011) (quoting *Freeman*, 551 F.3d at 406), or where a state class action is "subsume[d]" by an already pending federal class action, *In re Kitec Plumbing Sys. Prods. Liab. Litig.*, 2010 WL 11618052, at *2, 6-7 (N.D. Tex. Aug. 23, 2010).

31. The complaint here presents the type of pleading gamesmanship that justifies treating differently captioned cases as involving the same "matter in controversy." As explained above, Plaintiff's counsel represents the plaintiff in *Hiscock*, a case raising the same claims pertaining to the same securities on behalf of a broader putative class. *See supra* ¶¶ 3–6. Plaintiff's counsel did not file the instant action until after another litigant moved to transfer *Hiscock* and other overlapping cases to an MDL—dramatically reducing the nuisance value of *Hiscock*. *See supra* ¶ 4. Plaintiff's counsel did not argue that *Hiscock* did not belong in the MDL. Instead, Plaintiff's counsel filed this suit, seeking to recapture *Hiscock*'s nuisance value by filing the same claims on behalf of an artificially limited subset of the class members in *Hiscock*—sellers (but not buyers) of HCMC stock. In these circumstances, this Court should recognize that this action pertains to the same "matter in controversy" as in *Hiscock*, 28 U.S.C. § 1332(d)(2), which Hiscock admits "exceed[s] $5,000,000, exclusive of interest and costs," Ex. B ¶ 4. *See* 28 U.S.C. § 1446(c)(2) (if uncontested, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy").

32. Whether or not this case's amount in controversy is aggregated with that of *Hiscock*, the amount far exceeds $5 million. Therefore, the jurisdictional amount-in-controversy requirement is satisfied, and removal to this Court is proper under CAFA.

**II.     Alternatively, Removal Is Proper Pursuant to SLUSA.**

33.    CAFA and SLUSA are complementary in that any action removable under SLUSA "concerning a covered security" is excluded from CAFA. *See* 28 U.S.C. § 1332(d)(9)(A). SLUSA permits removal of (1) "covered class actions" (2) "based upon the statutory or common law of any State" (3) alleging "an untrue statement or omission of a material fact" (4) "in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2); *see Rabin v. JPMorgan Chase Bank, N.A.*, 2007 WL 2295795, at *5 (N.D. Ill. Aug. 3, 2007).

34.    The Court need not address SLUSA because removal is appropriate under CAFA. Furthermore, Plaintiff alleges that HCMC is an OTC stock, and TD Ameritrade thus submits it is not a covered security under SLUSA. To the extent the Court considers HCMC a "covered security" that is excluded from CAFA, however, the elements for SLUSA removal are satisfied here.

35.    *First*, Plaintiff's lawsuit qualifies as a "covered class action." A "covered class action" includes class actions seeking damages "on behalf of more than 50 persons or prospective class members." 15 U.S.C. §§ 77p(f)(2)(A)(i)(I) and 78bb(f)(5)(B)(i)(I). As explained above, *supra* ¶¶ 13–15, Plaintiff seeks damages on behalf of a proposed class that far exceeds 50 members.

36.    *Second*, Plaintiff's claims are "based upon the statutory or common law of any State" in that they allege common-law claims of negligence and breach of fiduciary duty under Nebraska law. Compl. ¶¶ 62-78.

37.    *Third*, Plaintiff's complaint alleges "an untrue statement or omission of a material fact" because its claims rest on purported violations of FINRA's best-execution rule. A claim that a defendant breached its "duty of best execution" is, at its "core," a complaint that the defendant "did not disclose its practice of not obtaining best execution." *Lewis v. Scottrade, Inc.*, 879 F.3d

11

850, 854 (8th Cir. 2018). Thus, while Plaintiff's complaint asserts that he "does not allege any misrepresentations or omissions," Compl. ¶ 11, courts have regularly concluded that claimed violations of the best-execution rule—even where plaintiffs "carefully avoided allegations that explicitly sounded in fraud (words like misrepresentation, omission, or deception are absent from their complaints)"—are nonetheless subject to removal under SLUSA. *Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 924 (8th Cir. 2018) (holding that the "gravamen" of a complaint alleging violation of the best-execution rule "involves a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security"); *see Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 932 (7th Cir. 2017) ("Likewise a broker-dealer that fails to achieve best execution for a customer … has a securities problem, not just a state-law contract or fiduciary-duty problem.").

38. *Fourth*, the alleged misrepresentation or omission regarding best execution occurred "in connection with the … sale" of a security—HCMC. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006) (recognizing that "Congress envisioned a broad construction" of that phrase).

39. Accordingly, to the extent HCMC is a "covered security," the requirements for SLUSA removal are satisfied.

## TIMELINESS OF REMOVAL

40. "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based …." 28 U.S.C. § 1446(b). The Supreme Court has confirmed that this 30-day deadline "is triggered by simultaneous service of the summons and complaint." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). Moreover the Federal Rules of Civil Procedure

12

provide that "the period continues to run until the end of the next day that is not a Saturday, Sunday, or a legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

41. Plaintiff filed this action on February 17, 2021, and served TD Ameritrade with the summons and complaint on February 25. Therefore, TD Ameritrade's deadline to remove is March 29, 2021. A copy of the as-served complaint and summons is attached hereto as Exhibit A.

42. With this submission, TD Ameritrade is timely seeking removal within 30 days of service of the summons and complaint.

### OTHER PROCEDURAL REQUIREMENTS AND NOTICE

43. In accordance with 28 U.S.C. § 1446(a), copies of the complaint and all other process, pleadings, and orders served on TD Ameritrade in the state court action are attached hereto as Exhibit A.

44. This removal to the Northern District of Illinois, Eastern Division is proper under 28 U.S.C. § 1446(a) because the state-court action is pending in the Circuit Court of Cook County, Illinois, which is located in this district and division.

45. Pursuant to 28 U.S.C. § 1446(d), upon filing the Notice of Removal, TD Ameritrade will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Circuit Court of Cook County, Illinois, Chancery Division.

Dated: March 25, 2021　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Christian T. Kemnitz
　　　　　　　　　　　　　　　　　　　　Christian T. Kemnitz
Elizabeth P. Papez　　　　　　　　　　　　Hannah O. Koesterer
GIBSON, DUNN & CRUTCHER LLP　　　　　KATTEN MUCHIN ROSENMAN LLP
1050 Connecticut Avenue, NW　　　　　　525 West Monroe Street
Washington, DC 20036　　　　　　　　　　Chicago, IL 60661
Phone: (202) 955-8608　　　　　　　　　　Phone: (312) 902-5379
epapez@gibsondunn.com　　　　　　　　　christian.kemnitz@katten.com

*Counsel for TD Ameritrade, Inc.*

13

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 25th day of March, 2021, the foregoing Notice of Removal was served by first-class mail upon the following:

Alexander N. Loftus
LOFTUS & EISENBERG, LTD.
161 N. Clark Suite 1600
Chicago, Illinois 60601
Phone: (312) 899-6625
alex@loftusandeisenberg.com

                                            */s/* Christian T. Kemnitz
                                            Christian T. Kemnitz